UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



JOHN DAVID HYFA LORENZO,

      Petitioner,[1]

    v.                                  20-CV-1372 (JLS)

WILLIAM P. BARR, Acting Attorney
General, et al.,

      Respondents.[2]

---

## DECISION AND ORDER

    David Hyfa Lorenzo John is a native and citizen of St. Vincent and the

Grenadines.  He has been detained since August 28, 2019 at the Buffalo Federal

Detention Facility in Batavia, New York.  His order of removal became

administratively final in March 2020.  He now petitions this Court for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.  John argues that the mandatory

detention statutes of the Immigration and Nationality Act ("INA") are

unconstitutional as applied to him.  He asks the Court to order Respondents

---

[1] Petitioner refers to himself as "John David Hyfa Lorenzo."  Dkts. 1, 6.  Because
DHS documents identify Petitioner as "David Hyfa Lorenzo John," however, the
Court refers to him by the last name "John."  *See generally* Dkts. 4-2, 4-3 (Exh. A);
*see also* Dkt. 4-2 (Exh. A) at 36; Dkt. 4, at 1 n.1.
[2] The Government argues, and this Court agrees, that the only proper Respondent
in this case is Jeffrey Searls, the Facility Director of the Buffalo Federal Detention
Facility, because he is the only Respondent with immediate custody over John.  Dkt.
4-4, at 15; *see, e.g., Rodriguez v. Barr*, No. 6:18-cv-06757-MAT, 2019 WL 2192516, at
*3 n.3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this
[Section] 2241 proceeding as he is the person with direct control over Petitioner's
detention." (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004))).

(hereinafter "the Government") to hold a constitutionally adequate bond hearing at which he may contest his continued detention and at which the Department of Homeland Security ("DHS") must establish, by clear and convincing evidence, that his continued detention is justified.

For the reasons that follow, this Court concludes that John is detained under 8 U.S.C. § 1231—not Section 1226(c). And under *Zadvydas v. Davis*, 533 U.S. 678 (2001), the relief requested in John's petition for writ of habeas corpus is denied because he fails to show there is no significant likelihood of his removal in the reasonably foreseeable future.

## BACKGROUND

## I.   TIMELINE OF RELEVANT EVENTS

John entered the United States in November 1999 as a lawful permanent resident from St. Vincent and the Grenadines. Dkt. 1, at 4 ¶ 19; Dkt. 4-1, at 2 ¶ 5.[3]

On July 23, 2012, John was convicted in the Supreme Court of New York, Kings County, of attempted criminal possession of a weapon in the second degree, in violation of New York Penal Law § 110-265.03. *See* Dkt. 4, at 2 ¶ 4; Dkt. 1, at 4 ¶ 22. As a result, John was sentenced to one year of imprisonment. Dkt. 4, at 2 ¶ 4. In addition, on April 25, 2014, John was convicted in Ulster County, New York, of criminal sale of a controlled substance in the third degree, in violation of New York

---

[3] Page references and citations to the parties' written submissions are to the pagination automatically generated by CM/ECF. However, citations to the Government's attached exhibits (Dkts. 4-2 and 4-3) are to the page numbers reflected on the documents themselves.

Penal Law § 220.39.  Dkt. 4, at 2 ¶ 4; Dkt. 1, at 4 ¶ 22.  He was sentenced to a five-year determinate prison sentence, with three years of post-release supervision. Dkt. 4, at 2 ¶ 4.  In addition, on August 15, 2017, following a guilty plea to attempt to knowingly make or possess dangerous contraband in prison in the first degree, John was sentenced to eighteen months to three years.  *Id.*

On April 25, 2019, DHS determined that John was removable because of his convictions and issued a Notice to Appear ("NTA") and placed him in immigration removal proceedings.  Dkt. 4, at 3 ¶ 6.  The NTA charged John with removability based on the following convictions: (1) an aggravated felony related to the illicit trafficking in a controlled substance, as provided in INA § 237(a)(2)(A)(iii); (2) violation of, or conspiracy or attempt to violate, any law or regulation of a state, the United States, or a foreign country relating to a controlled substance, as provided in INA § 237(a)(2)(B)(i); and (3) purchasing, selling, offering for sale, exchanging, using, owning possessing or carrying, or attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess or carry, in violation of any law, any weapon, part, or accessory that is a firearm or destructive device, as provided in INA § 237(a)(2)(C).  Dkt. 4-1, at 3 ¶ 11; Dkt. 4-2 (Exh. A), 30-32).

DHS ordered John detained on August 26, 2019.  Dkt. 4-1, at 4 ¶ 13. Following his release from the New York State Department of Corrections and Community Supervision, John entered DHS custody on August 28, 2019.  *Id.* at ¶ 14; Dkt. 1, at 4 ¶ 26.

3

On November 4, 2019, an immigration judge ordered John removed to St. Vincent and the Grenadines. Dkt. 4-1, at 4 ¶ 15; Dkt. 4-2 (Exh. A) at 6-12. On November 12, 2019, John appealed the removal order to the Board of Immigration Appeals ("BIA"). Dkt. 4-1, at 4 ¶ 16; Dkt. 4-2 (Exh. A) at 20-29. On November 18, 2019, however, John filed a notice to withdraw his appeal. *See* Dkt. 4-1, at 4 ¶ 17; *see also* Dkt. 4-2 (Exh. A), at 16 (letter from John's counsel to the BIA stating that John "does not wish to pursue an[] appeal" and "implores that the Board issue its decision dismissing his appeal as soon as possible so that ICE may effectuate his removal"). So, on March 13, 2020, the BIA returned his record to Immigration Court. Dkt. 4-1, at 4 ¶ 17; Dkt. 4-2 (Exh. A), at 1-3.

On March 18, 2020, DHS issued a warrant of removal. Dkt. 4-1, at 4-5, ¶ 19. That same day, DHS contacted the Consulate General of St. Vincent and the Grenadines, requesting issuance of a passport for John and informing the Consulate that John would be scheduled to depart the United States upon receipt of a passport or other suitable travel document. *Id.*; *see also* Dkt. 4-3 (Exh. A), at 102-03.

On April 17, 2020, John requested release from custody because of his "vulner[ability] to the ongoing corona[virus]" pandemic, belief that St. Vincent and the Grenadines "is not accepting any deportee from the Unite[d] States for now," and "strong family ties to the United States." Dkt. 4-3 (Exh. A), at 98-100; *see also* Dkt. 4-1, at 5 ¶ 20. John stated that he poses neither a danger nor a flight risk, and that he does "not refus[e] to be removed from the United States back to [his] country." Dkt. 4-3 (Exh. A), at 98. DHS informed John that it was working with

4

the St. Vincent consulate to obtain a travel document for his removal.  Dkt. 4-1, at 5 ¶ 21; Dkt. 4-3 (Exh. A), at 101.  In addition, on April 21, 2021, DHS denied John's request for release.  Dkt. 4-1, at 5 ¶ 22.  This decision cited John's failure to provide a valid address in the United States where he would reside; failure to establish substantial ties to the community; failure to establish that he was not a danger to the community; and because a bond or conditions of parole would not ensure his appearance at required immigration hearings.  *Id.*; Dkt. 4-3 (Exh. A), at 94-95.

On May 4, 2020, DHS provided a Notice to Alien of File Custody Review to John, which informed John that his custody status would be reviewed on or about June 2, 2020, and that John must demonstrate that he will "not pose a danger to the community" and that he "will not be a significant flight risk."  Dkt. 4-3 (Exh. A), at 89 (emphases omitted); Dkt. 4-1, at 5 ¶ 23.  On June 10, 2020, DHS informed John that he would not be released.  Dkt. 4-1, at 5 ¶ 24; Dkt. 4-3 (Exh. A), at 70-74.

On July 13, 2020, St. Vincent and the Grenadines issued an emergency transport to expire on July 25, 2020.  Dkt. 4-1, at 6 ¶ 25.  John was expected to travel there from the United States on July 24, 2020.  *Id.*  But John was "pulled from the charter" because St. Vincent and the Grenadines was not accepting escorting officers and because "ICE Air Operations mistakenly thought travel documents had not been issued when, in fact, documents had been issued."  *Id.*; *see also* Dkt. 4-2 (Exh. A), at 59.

On August 6, 2020, DHS conducted an "escort threat assessment," and concluded that, based upon his criminal history demonstrating propensity for

5

violent behavior and his "[d]isciplinary [i]ncidents" while in custody, John should be escorted during his removal. Dkt. 4-1, at 6 ¶ 26; Dkt. 4-2 (Exh. A), at 56.

As part of the review of his custody status, John was interviewed on September 8, 2020. Dkt. 4-1, at 7 ¶ 27; Dkt. 4-3 (Exh. A), at 66-68. Following that interview, on September 11, 2020, a DHS panel recommended that—based on his criminal history and lack of community ties and assistance from nongovernmental organizations—John remain detained. Dkt. 4-1, at 7 ¶ 28; Dkt. 4-3 (Exh. A), at 62-63. And, on September 30, 2020, DHS decided to continue John's detention. Dkt. 4-2 (Exh. A), at 57-58.

In September 2020, DHS was advised that St. Vincent was not accepting escorting officers. Dkt. 4-1, at 8 ¶ 30; Dkt. 4-2 (Exh. A), at 59. Since then, the Government maintains that "DHS/ICE has resolved with St. Vincent the issue regarding acceptance of escort officers" and that "[a] DHS/ICE Enforcement and Removal officer will accompany John to St. Vincent." Dkt. 4-1, at 8 ¶ 31. John's removal was set for December 16, 2020, at which time he was "scheduled to fly on Caribbean Airlines Flight 553" into St. Vincent. *Id.* The airline, however, cancelled that flight. *Id.* at 8 ¶ 32. In its November 19, 2020 filing, the Government states that John was "rebooked for the same flight—Caribbean Airlines Flight 553— within sixty days." *Id.*

## II.   PROCEDURAL HISTORY

On September 25, 2020, John filed this petition for a writ of habeas corpus challenging his detention at the Buffalo Federal Detention Facility. Dkt. 1. The

6

Government answered and filed a memorandum and declaration in opposition on

November 19, 2020.  Dkt. 4.  John replied on December 18, 2020.  Dkt. 6.

<u>DISCUSSION</u>

## I.   JURISDICTION

Habeas corpus review is available to persons who are "in custody in violation

of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

Circuit courts have jurisdiction, to the exclusion of district courts, over challenges to

the legality of final orders of deportation, exclusion, and removal.  *See Gittens v.*

*Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, §

106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of

deportation, exclusion, and removal, providing instead for petitions of review . . .

which circuit courts alone can consider.").  District courts, however, can review

claims by aliens challenging the constitutionality of their pre-removal detention.

*See Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

In this case, John asserts that his "ongoing prolonged detention," without any

adversarial hearing at which he could challenge his custody, violates the Fifth

Amendment's due process clause and the Eighth Amendment's "excessive bail

[c]lause."  Dkt. 1, at 8 ¶¶ 43-50; *id.* at 9 ¶ 4.  Therefore, John asks this Court to

determine that his detention is not justified and to "order [his] release" because "the

government has not established by clear and convincing evidence that [he] presents

a risk of flight or danger."  *Id.* at 9 ¶ 2.  Alternatively, John asks that this Court

order the Government to "schedule a hearing before an immigration judge" and

7

"establish by clear and convincing evidence that [John] presents a risk of flight or danger." *Id.* at ¶ 3. If the Government cannot meet this burden, John asks that be released. *Id.* In addition, John asks that this Court "[i]ssue a declaration" that his detention violates the Eighth Amendment. *Id.* at ¶ 4.

## II.   STATUTORY BASIS FOR PETITIONER'S DETENTION

At the outset, this Court must determine the statutory basis for John's detention. Whether his detention is governed by 8 U.S.C. § 1226 or 8 U.S.C. § 1231 potentially impacts whether he is entitled to relief and, if so, the form of that relief. *See Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *2 (W.D.N.Y. Jan. 8, 2020) (citing *Enoh v. Sessions*, 236 F. Supp. 3d 787, 791 (W.D.N.Y. 2017)).

8 U.S.C. § 1226 governs the detention of aliens *before* the removal period— broadly speaking, the detention of those aliens who "are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1226(c) specifically governs the arrest and detention of aliens who have committed certain criminal offenses enumerated in 8 U.S.C. § 1227. Section 1226(c) provides, in relevant part, that the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Thus, detention of certain criminal aliens pending removal proceedings is mandatory.

8 U.S.C. § 1231 governs the detention of aliens *during and after* the removal period—namely, those who are subject to final orders of removal. This period is derived from the statute, which allows DHS 90 days to effectuate a removal from

the United States following the entry of a final order of deportation or removal. *Id.* § 1231(a)(1)(A).

In particular, Section 1231(a)(1)(B) states that the removal period begins at the latest of the following events:

(i)     The date the order of removal becomes administratively final.
(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

It appears that John believes that the statutory basis for his detention is 8 U.S.C. § 1226(c). *See generally* Dkt. 1; *see also* Dkt. 6, at 3 ¶ 6 (stating that he is "subject to mandatory detention while he awaits removal, pursuant to . . . 8 U.S.C. [§] 1226(c)"). Nonetheless, John recognizes that "his final order of removal was [effective] on March 13, 2020." Dkt. 1, at 4, ¶ 23. He argues that, once a detention has become unreasonably prolonged, a noncitizen—including one statutorily subjected to mandatory detention—is constitutionally entitled to a bond hearing at which the Government must justify further detention. *See, e.g.*, Dkt. 1, at 5 ¶ 30.

The Government argues, and the Court agrees, that John is detained under 8 U.S.C. § 1231. Dkt. 4, at 1; Dkt. 4-4, at 9-10. Pursuant to 8 U.S.C. § 1231(a)(1)(B)(i), John is an alien subject to an administratively final order of removal. Specifically, John's order of removal became administratively final on March 13, 2020, when the BIA recognized that John withdrew his appeal. *See* 8 C.F.R. § 1241.1(b) (a removal order becomes final "[u]pon waiver of appeal").

9

Therefore, this Court will review the merits of his claims under the Section 1231 criteria set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[4]

## III.   JOHN'S DUE PROCESS CLAIMS

John argues that his continued detention violates his due process rights under the Fifth Amendment. *See, e.g.*, Dkt. 1, at 8 ¶¶ 43-46. He argues that his detention has become unreasonably long, and procedural due process requires that DHS provide him with a hearing at which DHS must justify his continued detention. *Id.* at 8 ¶ 45; *id.* at 5-7, ¶¶ 30-36. The Government argues that John has failed to show, under *Zadvydas*, that there is no significant likelihood of his removal in the reasonably foreseeable future. Dkt. 4-4, at 10-12.

In *Zadvydas*, the Supreme Court considered how 8 U.S.C. § 1231, and its "apparent authorization of indefinite executive detention," interacts with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. *See Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). The Supreme Court determined that Section 1231(a) authorizes detention after a final order of removal for a period "reasonably necessary" to effectuate the alien's removal from

---

[4] Section 1226(c) does not apply; John is no longer detained pending his removal proceedings. Therefore, "[t]o the extent that [John] previously may have had a cognizable due process argument [when he was detained] under [§ 1226], that claim has been rendered moot." *Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003). The Court makes no conclusions about detention under Section 1226. Similarly, the Court makes no conclusions about John's claim that his detention "without a hearing on danger and flight risk violates . . . the [Eighth] [A]mendment's excessive bail [c]lause." Dkt. 1, at 1 ¶ 3. That claim, too, is moot. *See Wang*, 320 F.3d at 147; *see also Prass v. Barr*, No. 19-CV-6397 (CJS), 2020 WL 1467279, at *2 (W.D.N.Y. Mar. 26, 2020).

the United States. *See Zadvydas*, 533 U.S. at 699-700. In other words, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute. *See id.* The Court ruled that a six-month period of detention pending removal is presumptively reasonable. *Id.* at 701. After six months, a detained noncitizen may seek release by demonstrating that his or her removal is not likely to occur in the reasonably foreseeable future. *Id.* at 699-700.

John's statutory removal period expired 90 days after his order became administratively final—ending on June 11, 2020. And his period of presumptively reasonable detention under *Zadvydas* ended on September 13, 2020.[5]

### A. Procedural Due Process

John argues that his prolonged detention without an adequate process for review violates his right to procedural due process. Dkt. 1, at 8 ¶¶ 43-46. He argues that he has been deprived of immigration hearings and he has spent "more [than] . . . six months . . . waiting for deportation" after the issuance of the final order of removal. *Id.* at 4 ¶ 24. In addition, he argues that, because he is "still waiting for ICE to issue his travel [d]ocument," there is not a significant likelihood that he can be removed to St. Vincent in the reasonably foreseeable future. *See id.* at 4 ¶ 23; *see also* Dkt. 6, at 3 ¶ 4 (arguing that his removal is unlikely because he "was pulled from the charter" when "ICE mistakenly thought travel documents had

---

[5] This Court, like most courts in this circuit, reads *Zadvydas* to mean that the six-month presumptively reasonable period of detention starts after the entry of a final order of removal, not after the expiration of the statutory 90-day removal period. *See, e.g.*, *Callendar v. Shanahan*, 281 F. Supp. 3d 428, 436 n.7 (S.D.N.Y. 2017) (collecting cases).

11

not been issue[d]"; "St. Vincent was not accepting escorting officers"; and there are "issues concerning flight cancellation").

The Government maintains that John's continued detention is lawful under Section 1231(a)(6) and *Zadvydas* and, therefore, does not offend due process. Dkt. 4-4, at 12. The Government argues that John has neither alleged, nor met his burden of demonstrating, that there is no significant likelihood of his removal in the reasonably foreseeable future. *Id.* at 10-12. Nonetheless, the Government argues that it has rebutted any such showing by providing evidence of its removal efforts—including that St. Vincent and the Grenadines has already previously issued travel documents and is willing to receive John, and that John is scheduled for removal within 2 weeks. *Id.* at 11-12; Dkt. 4, at 7-8, ¶¶ 18-20.

After expiration of the 90-day removal period, if the removal period has not been extended, 8 U.S.C. § 1231(a)(6) gives the Government the discretion to continue detaining certain categories of aliens. *See* 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is . . . removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title . . . may be detained beyond the removal period."). In *Zadvydas*, the Supreme Court determined that Section 1231(a)(6) does not permit indefinite detention: rather, there is an "implicit limitation" on an alien's post-removal-period detention under Section 1231(a)(6) "to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689.

As discussed above, the first six months of an alien's post-removal detention under Section 1231 is "presumptively reasonable." *See id.* at 701. Under *Zadvydas*,

once the presumptively reasonable six-month period has passed, an alien may be

released if he can establish that his removal is not reasonably foreseeable:

> After this [six]-month period, once the alien provides good reason to
> believe that there is no significant likelihood of removal in the
> reasonably foreseeable future, the Government must respond with
> evidence sufficient to rebut that showing. And for detention to remain
> reasonable, as the period of prior postremoval confinement grows, what
> counts as "reasonably foreseeable future" conversely would have to
> shrink. This [six]-month presumption, of course, does not mean that
> every alien not removed must be released after six months. To the
> contrary, an alien may be held in confinement until it has been
> determined that there is no significant likelihood of removal in the
> reasonably foreseeable future.

*Id.*[6] The Second Circuit has explained that this "reasonable foreseeability" test

"articulates the outer bounds of the Government's ability to detain aliens (other

than those serving criminal sentences) without jeopardizing their due process

rights." *Wang*, 320 F.3d at 146.

John's six-month, presumptively reasonable period of detention expired

approximately four months ago. John was ordered removed under 8 U.S.C. §

1227(a)(2). *See, e.g.*, Dkt. 4-2 (Exh. A), at 12 (citing removability under INA §§

237(a)(2)(A)(iii), (a)(2)(B)(i)). Therefore, the Government had authority to detain

him beyond the removal period, as provided in Section 1231(a)(6). *See* 8 U.S.C. §§

1227(a)(2)(A)(iii), (a)(2)(B)(i). Although John's detention has surpassed the

presumptively reasonable period of six months, he is not entitled to be released on

this basis alone. *See Zadvydas*, 533 U.S. at 701. John is only entitled to relief

---

[6] In light of *Zadvydas*, DHS issued regulations providing for custody status review
of noncitizens who have been detained for more than six months after a final order
of removal is issued. *See, e.g.*, 8 C.F.R. § 241.13.

under *Zadvydas* if he provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and the Government fails to respond with evidence sufficient to rebut that showing. *See Almonte v. Holder*, 983 F. Supp. 2d 234, 240 (W.D.N.Y. 2013) (citing *Zadvydas*, 533. U.S. at 701).

John has failed to sustain his initial burden under *Zadvydas*. The mere passage of time beyond the six-month presumptively reasonable period does not satisfy his burden under *Zadvydas*. *See Almonte*, 983 F. Supp. 2d at 240 ("[S]everal cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.") (collecting cases).[7]

Even if this Court were to conclude that John had presented sufficient evidence to show there is no significant likelihood of his removal in the reasonably foreseeable future, the Government has rebutted that evidence. The record suggests that the Government will facilitate John's removal shortly. Indeed, John's flight to St. Vincent and the Grenadines is scheduled within the next two weeks. Dkt. 4, at 7-8 ¶20; Dkt. 4-1, at 8 ¶ 32. DHS has consistently taken measures to

---

[7] The Government argues that John received adequate custody reviews. Dkt. 4-4, at 12-14. John received administrative reviews of his custody, including one based upon an interview with him. *See* 8 C.F.R. §§ 241.4(f), 241.4(k); *see also* Dkt. 4-1, at 5-7 ¶¶ 22-24, 27-29; Dkt. 4-4, at 12-14. Upon each of those reviews, DHS decided to continue John's detention because he posed a danger and risk of flight. Dkt. 4-3 (Exh. A), at 62-63, 70-74, 94-95. John has alleged no insufficiencies in this process that suggest he was not afforded due process.

effectuate John's removal.  Although he was pulled from the charter due to confusion regarding the issuance of travel documents, John's flight to St. Vincent and the Grenadines was initially scheduled for July 2020.  Dkt. 4-1. at 6 ¶ 25. John's second flight, scheduled for December 16, 2020, was cancelled by the airline. *Id.* at 8 ¶ 32.  Further, the Government maintains that "DHS/ICE has resolved with St. Vincent the issue regarding acceptance of escort officers."  *Id.* at 8 ¶ 31.  Thus. there appear to be no barriers to John's removal.  John has presented no relevant facts to contradict this expectation.[8]

## B. Substantive Due Process

John's substantive due process claim also fails.  Dkt. 1, at 8; Dkt. 6, at 4-5. Pursuant to *Zadvydas*, John's substantive due process rights "are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable." *Wang*, 320 F.3d at 146.  An alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.  *See Zadvydas*, 533 U.S. at 701.  At this time, the Court has determined that there is a significant likelihood of John's removal in the reasonably foreseeable future.  Thus, his substantive due process rights have not been violated.

---

[8] The denial of this claim, at this time and on these facts, does not prevent John from filing a petition in the future, in the event he is able to show his removal is no longer reasonably foreseeable under *Zadvydas*.

## CONCLUSION

For the foregoing reasons, the relief requested in John's petition for a writ of habeas corpus is denied.  His petition is dismissed—without prejudice to the filing of any new petition in the future based on new and different facts and consistent with the analysis above.  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:      January 11, 2021
            Buffalo, New York

                                    _____
                                    JOHN L. SINATRA, JR.
                                    UNITED STATES DISTRICT JUDGE

16